IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD HEALTH AND EDUCATION FOUNDATION,<br><br>    Plaintiff,<br><br>   v.<br><br>CAROLINA CASUALTY INSURANCE COMPANY,<br><br>    Defendant.<br>                                       / | No. C 08-5495 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |

Defendant's motion to dismiss the second amended complaint is scheduled for a hearing on May 11, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss the second amended complaint without leave to amend.

**BACKGROUND**

Plaintiff World Health and Education Foundation ("WHEF" or "plaintiff") has been insured by defendant Carolina Casualty Insurance Company ("CCIC" or "defendant") for several consecutive policy periods beginning in 2005. The relevant policy period is April 4, 2007 to April 4, 2008, during which plaintiff was insured under a Non-Profit Organization Liability Policy, No. 3729740 ("the Policy"). Second Amended Complaint ("SAC") Ex. 1.

On April 30, 2007, Joe Martin filed a lawsuit against WHEF ("the Martin Litigation"). WHEF alleges that it was served with the summons and complaint on or about September 12, 2007, and that it reported the lawsuit to CCIC on or about April 28, 2008. CCIC refused to defend WHEF in the

1  Martin Litigation on the ground that WHEF had not timely reported the claim to CCIC.  WHEF then
2  filed this suit in state court against defendant for declaratory relief, breach of insurance contract, and
3  breach of the duty of good faith and fair dealing.  Defendant removed the case to this Court pursuant
4  to diversity jurisdiction on December 8, 2008.  Plaintiff then amended the complaint, and defendant
5  moved to dismiss.

By order filed February 11, 2009, the Court granted defendant's motion to dismiss the first amended complaint and granted plaintiff leave to amend.  The order stated that as currently pled, the first amended complaint did not allege facts showing how the Martin claim was timely reported under the policy.  The Court granted plaintiff leave to amend to add allegations showing that plaintiff's claim was not barred.

On March 9, 2009, plaintiff filed a second amended complaint.  As with the first amended complaint, the second amended complaint alleges claims for declaratory relief, breach of insurance contract, and breach of the duty of good faith and fair dealing.  The second amended complaint also includes new claims for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, promissory estoppel, and equitable relief.  The fraud and misrepresentation claims are based primarily on the following new allegation:

> Before Plaintiff decided to purchase the policy, it was led to believe by Defendant and its agents, employees and representatives that Defendant will defend and indemnify Plaintiff for any claims that were made when Defendant's policy was in effect.  No one explained to Plaintiff that each policy year was [a] different insurance contract and that for there to be coverage, a Claim needed to be made AND reported in that particular policy year.  Based upon such representations/concealment, Plaintiff reasonably expected coverage for any Claim Made and Reported against Plaintiff while the Policy was still in effect, without regard to the policy year.  In addition, the policy provided a 60-day Extended Reporting Period.  Before Plaintiff decided to purchase the Policy, no one explained to Plaintiff that for there to be coverage in the Extended Reporting Period, a Claim must not only be reported during such extended reporting period, but also must have been made during the 60-day period.  Indeed, one of Defendant's marketing brochures makes no reference to any requirement that the Claim also be made during the 60-day period while advertising the so-called 60-day Extended *Reporting* Period.

SAC ¶ 10 (emphasis in original).

The new claim for equitable relief alleges that plaintiff should be granted equitable relief to avoid forfeiture because (1) "Plaintiff was continuously insured for four years by the same Defendant and reasonably expected that it would be covered for any claims made during the time the policies were

in effect"; (2) "No one informed plaintiff about the limitation on reporting placed by the so-called 'Extended Reporting Period' provision"; (3) "The Policy's 'Extended Reporting Period' does not explain limitation of reporting in a language that would be plain and clear to a lay person"; (4) "The Policy's 'Extended Reporting Period' provision is inconspicuous and misleading"; (5) "The Claim was reported within 24 days of the expiration of the 2007-2008 Policy"; and (6) "Any delay in reporting caused absolutely no prejudice to Defendant." *Id*. ¶ 55.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965, 1974. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.* at 1965.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

3

quotation marks omitted).

## DISCUSSION

**I.     Declaratory relief, breach of insurance contract, and breach of implied covenant of good faith and fair dealing claims**

Defendant contends that because plaintiff did not timely report the Martin Litigation to defendant during the 2007 policy period, defendant has no duty to defend and therefore plaintiff has not stated a claim upon which relief can be granted. Plaintiff maintains that the claim was timely reported to defendant, and that regardless, defendant was not prejudiced by the delay and therefore may not deny coverage.

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "When determining whether a particular policy provides a potential for coverage and a duty to defend, [the Court is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). "The rules governing policy interpretation require [the Court] to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id*.

The insurance policy at issue is a "claims made and reported" policy, as opposed to an "occurrence" policy.[1] Thus, as stated on the policy's Declarations Page,

> **THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED REPORTING PERIOD, OR THE PURCHASED EXTENDED REPORTING PERIOD.**

SAC, Ex. 1. Section III.J. defines "Policy Period" to mean the "period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy." *Id*. The Declarations to the 2007

---

[1] Under a "claims made" policy, an insurer provides coverage for any loss resulting from claims *made* during the policy period. Under an "occurrence" policy, an insurer provides coverage for any loss resulting from acts that *occur* during the policy period. *See Burns v. International Insurance Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991).

4

Policy state in Item 2. that the policy period is "from April 4, 2007 (inception date) to April 4, 2008 (expiration date) (Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)." *Id*. (emphasis in original).

Section VII. of the Policy, entitled "Notice of Claims and Multiple Claims," states:

> As a condition precedent to their rights under this Policy, an **Insured** shall give the **Insurer** written notice of any **Claim**:
>
> 1. in the event of a lawsuit, as soon as practicable, but in no event later than 15 days after such claim is first made, or
>
> 2. in the event of all other **Claims**, as soon as practicable, but in no event later than 90 days after such **Claim** is first made.

*Id*. (emphasis in original). Section III.A. defines "Claim" to mean a "written demand for monetary or non-monetary relief" and states that a "Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured." *Id*. Plaintiff alleges it was served with the summons and complaint in the Martin Litigation on September 12, 2007, when the 2007 Policy was in effect, and that it reported the claim to CCIC on April 28, 2008, 24 days after the 2007 Policy expired. SAC ¶ 9.

Defendant contends that WHEF did not timely report the Martin Litigation claim because the claim was made on September 12, 2007, and under the policy should have been reported no later than 15 days later, on September 25, 2007. Plaintiff alleges that it timely reported the Martin claim under the "Extended Reporting Period" section of the policy. That provision provides, in relevant part:

> Without any additional premium being required, there shall be an automatic extension of the coverage granted by this Policy with respect to any **Claim** first made and reported during a period of 60 days after the date upon which the **Policy Period** ends, but only with respect to any **Wrongful Act** fully occurring prior to the end of the **Policy Period** and otherwise covered by this Policy and only if there is no other policy or policies that would otherwise provide insurance for such **Wrongful Act**. This 60 day period shall be referred to as the Automatic Extended Reporting Period.

*Id*. (emphasis in original).[2] However, this section is inapplicable because it only applies to claims "first made and reported during a period of 60 days upon which the Policy Period ends." Here, the Martin

---

[2] The SAC cites Section II.A. of the "Extended Reporting Period" provision of the Policy. SAC ¶ 9. However, by its express terms Section II.A. only applies if the insurer or the insured cancels or refuses to renew the policy. Since plaintiff renewed the policy for an additional term from April 4, 2008 to April 4, 2009, Section II.A. is inapplicable. Elsewhere in the complaint, plaintiff refers to the "60-day Extended Reporting Period," which is found in Section II.D. of the "Extended Reporting Period" provision. *See* SAC ¶ 10. Accordingly, the Court analyzes whether plaintiff timely reported the claim under Section II.D.

5

Litigation claim was first *made* on September 12, 2007, well before the policy expired.

Plaintiff argues that the terms of the "Extended Reporting Period" are ambiguous, and thus should be construed in its favor. Plaintiff asserts that a lay person reading this provision would not understand that for a claim to be covered under this provision, a claim must have been made after the policy expired. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Courts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19 (internal citations omitted).

The Court finds no ambiguity in the policy language. The Extended Reporting Period states that "there shall be an automatic extension of the coverage granted by this Policy with respect to any Claim *first made and reported during a period of 60 days after the date upon which the Policy Period ends*, but only with respect to any Wrongful Act fully occurring prior to the end of the Policy Period and otherwise covered by this Policy and only if there is no other policy or policies that would otherwise provide insurance for such Wrongful Act." SAC, Ex. 1 (emphasis added). The plain meaning of this language is that for a claim to be covered under the Extended Reporting Period, the claim must be "first made and reported" during a period of 60 days after the date the policy expired. Under the definition of "Claim," the policy states that "A Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured." *Id*. An insurance policy must be interpreted as a whole and in context." *Fire Ins. Exchange v. Superior Court*, 116 Cal. App. 4th 446, 454 (2004). Here, as alleged in the SAC, the claim was first made on September 12, 2007, before the 2007 policy expired, and thus the Extended Reporting Period does not apply.

Plaintiff also argues that because plaintiff renewed its policy with defendant for another policy period from April 2008 to April 2009, without a gap in coverage, plaintiff reasonably expected it would be covered during this period. However, if a claim is not timely reported during a policy period, the insured is not covered simply because it has a subsequent policy. In *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.*, 163 Cal. App. 4th 1387, 1390 (2008), an insured received notice of a claim during his first policy, but did not report it because he did not think the letter he had received constituted

6

a "claim" for purposes of his policy. The insured failed to notify his insurer within 30 days after the expiration of his policy period, which was required by the policy. *Id.* at 1369. A lawsuit was formally filed against him during the next policy period. *Id.* at 1390. The court held that the "subsequent notice of the lawsuit during the second policy period concerned the same claim and therefore was untimely," and it did not matter that the insured had two consecutive, uninterrupted policies. *Id.* at 1396.

Plaintiff also invokes the notice-prejudice rule, which provides that an insurer cannot assert lack of timely notice as a defense unless the insurer was actually prejudiced by such delay. However, California courts have repeatedly held that the notice-prejudice rule does not apply to claims made policies, because to apply it as such would essentially convert these policies into occurrence based policies. *See Slater v. Lawyers' Mutual Insurance Co.*, 227 Cal. App. 3d 1415, 1422-23 (1991); *Pacific Employers Insurance Co. v. Los Angeles Sup. Court*, 221 Cal. App. 3d 1348, 1357-60 (1990).

## II. Fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and promissory estoppel

Plaintiff's claims of fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and promissory estoppel are premised on allegations that "[b]efore Plaintiff decided to purchase the policy, it was led to believe by Defendant and its agents, employees and representatives that Defendant will defend and indemnify Plaintiff for any claims that were made when Defendant's Policy was in effect" and that "[n]o one explained to Plaintiff that each policy year was [a] different insurance contract and that for there to be coverage, a Claim needed to be made AND reported in that particular policy year." SAC ¶ 10.

Defendant contends that plaintiff's claims fail because they do not meet Federal Rule of Civil Procedure 9(b)'s requirement that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

7

The Court agrees with defendant that plaintiff has not pled these claims with sufficient particularity. The complaint does not identify who at CCIF made the alleged misrepresentations, when the misrepresentations were made, or to whom at WHEF the misrepresentations were made. Plaintiff's assertion that Rule 9(b)'s pleading requirements only apply to securities fraud and RICO cases is without merit. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *see also, e.g.*, *Moore v. Brewster*, 96 F.3d 1240, 1245-1246 (9th Cir. 1996) (applying Rule 9(b) to fraud claim related to disbursement of bond), *superceded by statute on other grounds*; *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (applying Rule 9(b) to fraud claim against insurance company).

Defendant contends that leave to amend these claims would be futile because of the integration clause in the Policy, which is found under section VIII. "General Conditions," subsection G. "Entire Agreement," and provides that "By acceptance of this Policy, the **Insureds** and the **Insurer** agree that this Policy and any written endorsements attached hereto constitute the entire agreement between the parties." SAC, Ex. 1 (emphasis in original). Defendant argues that as a matter of law, the express terms of the claims made and reported provisions are binding and controlling and plaintiff cannot seek to change the policy terms by reference to purported statements made before the issuance of the policies.

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a). "[W]hen the parties intend a written agreement to be the final and complete expression of their understanding, that writing becomes the final contract between the parties." *EPA Real Estate Partnership v. Kang*, 12 Cal. App. 4th 171, 175 (1992). The determination of whether an agreement is fully integrated is a question of law. *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434 (1992)

Plaintiff contends that its fraud and misrepresentation claims are not barred by the integration clause because parol evidence is admissible to prove fraud in the inducement. "The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Id.*, 5 Cal. App. 4th at 1433. However, "evidence

8

of [] fraud is admissible in an action for rescission because it does not go to contradict the terms of the parties' integrated agreement, but to show instead that the purported instrument has no legal effect." *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 42 (1995). Plaintiff's argument is misplaced, however, because plaintiff does not seek rescission of the 2007 Policy. To the contrary, plaintiff seeks relief under that Policy. The parol evidence at issue – alleged misrepresentations about coverage under the Policy – would not show that no binding contract was made, but rather would contradict the written terms of the integrated Policy. *See Everett v. State Farm General Insurance Company*, 162 Cal. App. 4th 649 (2008) (oral representations by insurance agents were ineffective to change terms of fully integrated homeowner's insurance policy). The Court concludes that the 2007 Policy was fully integrated, and that plaintiff's fraud, misrepresentation, and estoppel claims are barred.

## III. Equitable relief to avoid forfeiture

Plaintiff alternatively seeks equitable relief to avoid a forfeiture. Plaintiff relies on *Root v. American Equity Specialty Insurance Co.*, 130 Cal. App. 4th 926, 929-30 (2005), in which the court held that where a reporting requirement is an express condition precedent to coverage in an insurance policy, the reporting requirement may be "equitably excused" so as to avoid forfeiture. The *Root* court emphasized the "narrowness" of its decision, and the "particular circumstances of this case." *Id*. at 929. In *Root*, the plaintiff had a legal malpractice insurance policy with the defendant. On February 25, 1999, three days before the policy expired, a malpractice action was filed against the plaintiff, but the malpractice suit was not served on the plaintiff until after the policy expired. However, on the same day the malpractice suit was filed, the plaintiff received a phone call from someone who identified herself as an employee of a "legal journal" seeking the plaintiff's reaction to the lawsuit. The plaintiff thought the phone call was a prank,[3] and did not report the claim to the insurance company. The plaintiff left for a weekend vacation, returning on March 2, 1999. That day he read an article describing the

---

[3] The *Root* court stated that the malpractice action arose out of a settlement of a discrimination case in which Root had obtained a "whopping $2.75 million for his client," and the court noted that "[t]his court would later, in reversing a judgment for malpractice obtained by Jalali (and before this court was ever aware of the instant coverage case), hold that Root had done 'a very good job.'" *Id*. at 930-31.

9

malpractice action, and "Root *immediately* notified American Equity of the claim." *Id*. at 931 (emphasis in original). American Equity denied the claim because Root had not reported the claim during the policy period. The policy did not include an extended reporting period provision. *Id*. at 933.

The court held that under the facts of that case it was appropriate to equitably excuse the plaintiff's failure to report the claim before the policy expired. Significantly, the court noted that "the fact that the insurer did not give the insured the opportunity to buy an extended reporting endorsement which would (if it was anything like the ones in the reported cases) have given him an extra 60 days to report any claims may be of significance. . . . The same might be said if Root had had sufficient time to conduct an investigation as to whether a claim had indeed been made against him, or had delayed reporting the claim beyond the day on which he received confirmation of the claim." *Id*. at 948. The court also emphasized that "[s]ometimes– indeed most of the time– it will not be equitable to excuse the nonoccurrence of the condition, so it is not excused." *Id.*

Here, plaintiff has not alleged any facts that would indicate equitable relief is appropriate. In contrast to *Root* where the plaintiff first received notice of the claim under ambiguous circumstances, and reported the claim as soon as he had information that he had in fact been sued, here plaintiff had notice of the Martin Litigation no later than September 12, 2007, and waited 213 days to report the claim. The Court finds dismissal is appropriate because, although plaintiff's claim for equitable relief involves a factual inquiry, *Root* makes clear that such relief is reserved for unusual cases, and neither the second amended complaint nor plaintiff's opposition papers suggest *any* basis for granting equitable relief.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss the complaint without leave to amend. Docket No. 20.

**IT IS SO ORDERED.**

Dated: May 6, 2009

SUSAN ILLSTON
United States District Judge

10